[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE (#104)
The plaintiffs, Michael and Anna Ormsby, allege the following facts in their revised complaint. On August 18, 1998, a fire caused damage to the plaintiffs' home. The plaintiffs contacted their insurance carrier, defendant Nationwide Mutual Fire Insurance Company (Nationwide), who assigned defendant Russ Goodspeed (Goodspeed), to handle the plaintiffs' claim. The plaintiffs retained John P. Ranciato, Jr. (Ranciato), a licensed public adjuster to assist in the settlement of their loss.
On August 20, 1998, Nationwide, acting through Goodspeed, enlisted CT Page 6184 Service Master to clean the plaintiffs' property despite Ranciato's determination that a majority of the plaintiffs' property was not salvageable. Additionally, the plaintiffs allege that Ranciato submitted structural and personal property estimates on August 26, 1998, and September 9, 1998, and that Nationwide, acting through Goodspeed, "refused to fulfill its contractual duty to the plaintiffs and refused without proper cause to negotiate plaintiffs' claim." The plaintiffs allege that Nationwide, acting through Goodspeed, "refused to provide plaintiffs with the method by which Fire-Tech, defendants' preferred contractor, evaluated the scope of loss; defendants could not and would not justify unit price costs for the aforementioned Fire-Tech structural estimate; [and] defendants refused to utilize unit cost pricing indices that they had previously utilized from one of defendants' own preferred contractors. . . ." On October 19, 1998, Nationwide, through Goodspeed, sent the plaintiffs a copy of the defendants' estimate of building repairs which it termed "Offer of Settlement." The plaintiffs allege that the "defendants knew or should have known that such actions were in contravention of the policy holders rights. . . . Defendants actions were intended to coerce the plaintiffs into making an uninformed decision."
During late December, 1998, and early January, 1999, Goodspeed met with Ranciato at the site of the fire to review the personal property inventory. These two meetings lasted approximately two hours each. The plaintiffs allege that, "[G]oodspeed's refusal to spend more than two hours at the loss site due to the below-freezing temperatures substantially impaired plaintiffs' ability to fully recover on the personal property losses sustained." On February 1, 1999, Nationwide through Goodspeed made an offer on the plaintiffs' personal property. The plaintiffs allege that Goodspeed used Ranciato's report "and haphazardly made revisions and deletions from said report which were arbitrary and capricious." The plaintiffs allege that "Goodspeed determined that the plaintiffs should have to utilize brushes, combs, and other bathroom products and medicines that had not only been subject to fire, water, and smoke damage, but had been trampled on by firefighters, cleaning crews, and other representatives of the insured and the defendant over the course of five months. In addition, defendant Goodspeed expected the plaintiffs to salvage perfume, body products, medicines, cleaning products, and clothing." Finally, the plaintiffs allege that they "at the time of this lawsuit are unable to move back into their home, and to this day, the plaintiffs have not been fully compensated for the loss to their home and personal property."
On December 30, 1999, the plaintiffs, Michael and Anna Ormsby, filed a revised complaint in eleven counts against Nationwide and Goodspeed. The first, second, fourth and fifth counts were stricken by the court during CT Page 6185 oral argument.[1] The third count alleges a breach of the implied covenant of good faith and fair dealing against Nationwide. The sixth and seventh counts assert claims of intentional infliction of emotional distress against Nationwide and Goodspeed, respectively. The eighth and ninth counts allege fraud against Nationwide and Goodspeed, respectively. The tenth and eleventh counts allege negligent misrepresentation against Nationwide and Goodspeed, respectively.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Id.
The defendants move to strike the third count asserted against Nationwide for breach of the implied covenant of good faith and fair dealing on the ground that the plaintiffs failed to allege facts to demonstrate that Nationwide "consciously did wrong because of a dishonest purpose or moral obliquity." In that count, the plaintiffs allege that the misconduct of the defendants, including the refusal to compensate the plaintiffs without proper cause for a covered loss, resulted in a breach of the duty to act in good faith and fairly in handling the plaintiffs' claim.
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Gaudio v.Griffin Health Services Corp., 249 Conn. 523, 564, 733 A.2d 197 (1999). "[T]he implied covenant of good faith and fair dealing has been applied . . . in variety of contractual relationships, including . . . insurance contracts." Verrastro v. Middlesex Ins. Co., 207 Conn. 179, 190,540 A.2d 693 (1988). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) Habetz v. Condon, 224 Conn. 231, 237,618 A.2d 501 (1992). "[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to CT Page 6186 liability in tort." L.F. Pace Sons, Inc. v. Travelers Indemnity Co.,9 Conn. App. 30, 46, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886
(1986).
Construing the facts most favorably to the plaintiff the court finds that the plaintiffs have stated a legally sufficient claim for breach of the covenant of good faith and fair dealing. The plaintiffs have alleged that the defendants "refused to provide plaintiffs with the method by which Fire-Tech, defendants' preferred contractor, evaluated the scope of loss; defendants could not and would not justify unit price costs for the aforementioned Fire-Tech structural estimate; defendants refused to utilize unit cost pricing indices that they had previously utilized from one of defendants own preferred contractor. . . . [Defendants] failed to respond to [personal property report] requests and failed to communicate or explain defendant Nationwide's coverage position within a reasonable time after proofs of loss were submitted. . . . Defendant Nationwide, through its agent, defendant Goodspeed did not make an offer on plaintiffs' personal property until February 1, 1999, approximately five and one-half months after the loss occurred at the plaintiffs' home. . . . Goodspeed determined that the plaintiffs should have to utilize brushes, combs, and other bathroom products and medicines that had not only been subject to fire, water, and smoke damage, but had been trampled on . . . Goodspeed expected the plaintiffs to salvage perfume, body products, medicines, cleaning products, and clothing. . . . [T]he plaintiffs have not been fully compensated for the loss to their home and personal property."
Other cases have held that when allegations are made in a complaint that are similar to those made by the plaintiff, it is sufficient to state a cause of action for breach of the implied covenant of good faith and fair dealing. See Genovese Enterprises v. Sphere Drake Ins. PLC, Superior Court, judicial district of Waterbury, Docket No. 128855 (September 9, 1996, Pellegrino, J.) (17 Conn.L.Rptr. 557) (court found claim legally sufficient when, "[t]he defendant on several occasions failed to acknowledge and act with reasonable promptness in response to communications from the plaintiff. . . . The defendant failed on several occasions to conduct a reasonable investigation into this loss. . . . The defendant on several occasions failed to promptly provide a reasonable explanation of the basis in the insurance policy for the denial of payment for the loss."); Burnside v. Nationwide Mutual Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343068 (September 18, 1997, Melville, J.) (court found claim legally sufficient when plaintiff alleged that defendant: "a. Committed unfair settlement practices by not attempting in good faith to effectuate prompt, fair and equitable resolution of the plaintiffs' claim for basic reparations benefits; b. Compelled the plaintiffs to institute CT Page 6187 litigation to recover amounts due under the insurance contract; and c. Failed to reasonably, promptly and adequately investigate plaintiffs' claim for basic reparations benefits."). In the present case, the plaintiffs' allegations state a legally sufficient claim for breach of the implied covenant of good faith and fair dealing and, therefore, the motion to strike count three is denied.
The defendants move to strike counts six and seven for intentional infliction of emotional distress on the ground that such claims are legally insufficient because they fail to allege facts that demonstrate that the plaintiffs suffered severe emotional distress and that, as a matter of law, the conduct alleged does not rise to the level of extreme and outrageous. In the sixth and seventh counts, the plaintiffs incorporate paragraphs from other counts of the revised complaint and allege that "[a]t the time the defendants engaged in the conduct above described, they knew that the plaintiffs probably would suffer emotional distress as a result" and "[t]he actions of the defendants . . . were extreme and outrageous."
"In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) DeLaurentis v. New Haven, 220 Conn. 225, 266-67,597 A.2d 807 (1991). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) Id., 267.
The issue of whether the defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be decided by the court. Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 18, 597 A.2d 846
(1991). "This is so at least in part to protect courts from being flooded by suits claiming distress for every kind of threat, indignity or abuse no matter how trivial." (Internal quotation marks omitted.)Roberts v. Kelley, Superior Court, judicial district of New Haven at New Haven, Docket No. 418904 (April 9, 1999, Silbert, J.). "Only where reasonable minds can differ does it become an issue for the jury."Mellaly v. Eastman Kodak Co., supra, 42 Conn. Sup. 18. "`Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, CT Page 6188 and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, "Outrageous!"' 1 Restatement (Second) of Torts § 46 comment (d)." Id., 20. The plaintiffs have failed to state a legally sufficient claim for intentional infliction of emotional distress.
"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Bell v. Board of Education,55 Conn. App. 400, 409, 739 A.2d 321 (1999). "There are no appellate Connecticut cases discussing the application of this tort against insurance companies." Bergen v. Standard Fire Ins. Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 044099 (December 31, 1997, Corradino, J.) (20 Conn.L.Rptr. 154). In their memorandum of law, the defendants have cited numerous cases from other jurisdictions where intentional infliction of emotional distress claims have been made against insurance companies ineffectively. One case cited by the defendants, Tobolt v. Allstate Ins. Co., 393 N.E.2d 1171 (Ill.App.Ct. 1979), also cited by Bergen v. Standard Fire Ins., supra,20 Conn.L.Rptr. 154, provides a discussion of intentional infliction of emotional distress claims against insurance companies.[2]
In Tobolt v. Allstate Ins. Co., supra, 393 N.E.2d 1171, the Illinois Appellate Court upheld the trial court's striking and dismissal of the intentional infliction of emotional distress count against an insurance company. The plaintiffs' complaint had alleged the following: "Allstate had paid less than $20,000 and refused to make any further payments. At the time of the loss, plaintiffs owned no assets or property of any appreciable value, with the exception of their home and personal belongings consumed by the fire. . . . As a result of the fire loss, plaintiffs were indigent and in great financial distress and were unable to pay off the note because of bills incurred due to the fire. . . . Plaintiffs were compelled to borrow money, accept gifts and depend on the help of relatives in order to provide the necessities of life. . . . Plaintiff Bertha Tobolt has become extremely nervous, has had to seek medical attention for her nerves, is required to take pills and has lost time from her employment. Plaintiff Vance Tobolt has a previously incurred physical disability requiring him to sleep on a certain type of bedding in his home. His temporary lodging in motels was unduly long, greatly inconvenienced him and caused him physical and mental distress. . . . Allstate had notice and knew, or had reason to know full well, that its deliberate and unwarranted refusal to honor numerous demands during a time when plaintiffs were in dire need of the insurance proceeds would CT Page 6189 be and was in reckless disregard of and harmful to the interest of plaintiffs and would impair their ability to provide the necessities of life for themselves and their son. Allstate has persisted in the use of dilatory tactics in the settlement of plaintiffs' claim and has also delayed in even giving its approval to commence repairs for a period in excess of two months. Allstate has repeatedly sought to minimize the payment of a just claim and has not provided sufficient funds to properly repair plaintiffs' home and has otherwise persisted in its refusal to pay the claim in full." Id., 1172-73. In holding that the plaintiffs had failed to state a legally sufficient claim for intentional infliction of emotional distress, the court stated: "The allegations . . . show that the only dispute between plaintiffs and Allstate was the amount of the adjustment and the amount owing them. No facts are alleged showing how Allstate's adjustment of the fire loss constituted outrageous conduct by Allstate." Id., 1176. The court reasoned that "Allstate was only insisting upon its legal rights in a permissible way." (Internal quotation marks omitted.) Id., 1177.
Similarly, the facts of the present case amount to a disagreement between the plaintiffs and the defendants as to the amount of the loss. The plaintiffs' and Ranciato's disagreement with the defendants on the value of the claim or the handling of the claim does not state a legally sufficient claim for intentional infliction of emotional distress. Furthermore, the plaintiffs' allegations that, "Goodspeed determined that the plaintiffs should have to utilize brushes, combs, and other bathroom products and medicines that had not only been subject to fire, water, and smoke damage, but had been trampled on by firefighters, cleaning crews, and other representatives of the insured and the defendant over the course of five months" and that "defendant Goodspeed expected the plaintiffs to salvage perfume, body products, medicines, cleaning products, and clothing" do not meet the standard of extreme and outrageous conduct and do not "exceed all bounds usually tolerated by decent society . . . ." McPhail v. Milford, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 054506 (February 25, 1999, Thompson, J.). Therefore, such conduct is not so abusive or intolerable as to amount to intentional infliction of emotional distress and the court should the motion to strike counts six and seven.
The defendants move to strike counts eight and nine on the ground that they do not allege a sufficient claim for fraud because "(1) they do not set forth the specific acts relied upon; (2) they do not allege "statements of fact, nor do the statements relate to an existing or past fact; and (3) the facts alleged do not support a causal connection between the statements and the plaintiffs claimed damages." The plaintiffs allege fraud in counts eight and nine against Nationwide and Goodspeed, respectively, and claim judgment "for theft of their CT Page 6190 aforesaid premium payments, by fraud, in accordance with the provisions of section 52-564 of the General Statutes." The plaintiffs claim that Nationwide's slogan, "Nationwide is on your side," and Nationwide's assurance that the plaintiffs would be afforded "fast, fair and friendly service" are false representations made as statements of fact.
"[T]he essential elements of an action in . . . fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act on it; and (4) the other party did so act upon that false representation to his injury." Barbara Weisman, Trusteev. Kaspar, 233 Conn. 531, 539, 661 A.2d 530 (1995). "All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery." Citino v. Redevelopment Agency, 51 Conn. App. 262,275, 721 A.2d 1197 (1998). "Where a claim for damages is based upon fraud, the mere allegation that a fraud has been perpetrated is insufficient; the specific acts relied upon must be set forth in the complaint." Maruca v. Phillips, 139 Conn. 79, 81, 90 A.2d 159 (1952);Chestnut v. Kent, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 346653 (April 17, 1998, Skolnick, J.) (22 Conn.L.Rptr. 29, 30). "The requirement that a representation be made as a statement of fact focuses on whether, under the circumstances surrounding the statement, the representation was intended as one of fact as distinguished from one of opinion." (Internal quotation marks omitted.) Meyers v. Cornwell Quality Tools, Inc., 41 Conn. App. 19, 28-29,674 A.2d 444 (1996).
The plaintiffs have failed to state a legally sufficient claim for fraud. As the defendants submit in their memorandum of law, the plaintiffs fail to allege who made the statements or the details of the statements with sufficient specificity. "Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise, and unequivocal." Connell v. Colwell, 214 Conn. 242, 252, 571 A.2d 116
(1990). Furthermore, neither of the representations which the plaintiffs rely on can be construed as a "statement of fact." Both "Nationwide is on your side" and "fast, fair and friendly service" are opinions referring to future conduct.[3] In the context of a defamation action, "th[e] distinction [between fact and opinion] may be somewhat nebulous . . . [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." (Citations omitted; internal quotation marks omitted.)Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 111-12,438 A.2d 1317 (1982). Ordinary persons would not consider "Nationwide is on your side" or "fast, fair and friendly service" as statements of fact. Not only do the statements refer to future conduct, but they are CT Page 6191 subjective in nature. The motion to strike counts eight and nine is granted.
The defendants move to strike counts ten and eleven alleging negligent misrepresentation. Counts ten and eleven allege the following: "Defendant Nationwide, through its agent, defendant Goodspeed, supplied false information for the guidance of the plaintiffs . . . . includ[ing] misleading the plaintiffs as to the value of their personal belongings; and the value of their claim. In addition, defendant Goodspeed misled the plaintiffs about the substantive provisions of their insurance policy. When defendant Goodspeed stated, `I do not have to give you an offer on the personal property, because if we do not agree on the structural, I'll just include it in the appraisal' he failed to exercise reasonable care or competence in communicating the options available to the plaintiffs in adjusting their fire loss. The defendant Goodspeed should have known that the aforementioned statement was incorrect."
"One who, in the course of his [or her] business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information." Beverly Hills Concepts, Inc.v. Schatz Schatz, 247 Conn. 48, 57, 717 A.2d 724 (1998). "The basic element of a claim for misrepresentation . . . is whether there was a misstatement. . . . Without a misrepresentation, there can be no justifiable reliance." Citino v. Redevelopment Agency, supra,51 Conn. App. 275.
The plaintiffs have failed to allege any facts to demonstrate that they relied on any misrepresentations given to them by Goodspeed or Nationwide. As the defendants note in their memorandum, the facts alleged in the complaint indicate that the complaint in the present suit was filed in part because Ranciato disagreed with the valuation of the plaintiffs' property by the defendants. Assuming arguendo that the defendants supplied false information to the plaintiffs, the plaintiffs have failed to allege facts to demonstrate whether and how the plaintiffs relied on the defendants' alleged acts or omissions. Therefore, the plaintiffs have failed to state a legally sufficient claim for negligent misrepresentation and counts ten and eleven are stricken.
Joseph A. Licari, Jr., Judge